No. 53.—WILLIAM CALLAWAY, administrator of W. P. Gammage, plaintiff in error, *vs.* JONES & QUATTLEBUM, defendants in error.

[1.] Where the answer to a charge in a bill is a mere matter of opinion, a denial, founded upon belief only, does not swear off the equity, so as to entitle the defendant to a dissolution of the injunction.

[2.] A general warranty of soundness may cover even patent defects.

[3] Where the Court gets jurisdiction of the person or property of a non-resident, it will retain it to administer justice to its own citizens, and will not send them to a foreign jurisdiction to seek relief.

In Equity, in Sumpter Superior Court. Decision by Judge PERKINS, August Term, 1855.

This bill was filed by William P. Gammage, in his lifetime,

alleging that Jones & Quattlebum, in December, 1850, sold to complainant two negroes—Tenah and Rachel, for the sum of $1100. and gave a written warranty of soundness; that complainant gave them a mortgage upon the negroes for the purchase money, and has paid them a portion of the same; that they had foreclosed the mortgage for the balance, $675, besides interest, and were proceeding with the *fi. fa.*; that both of the negroes were unsound, Tenah having a disease of the womb, and Rachel having a defect in one of her eyes; and that the amount already paid was the full value of the negroes; that defendants resided in the State of South Carolina. The prayer was for an injunction.

The defendants' answer denied that Tenah had any disease of the womb, or was unsound—admitted the defect in Rachel's eye, but insisted it was a patent defect, and not covered by the warranty.

The Court, on motion, dissolved the injunction, and this decision is assigned as error.

BROWN & BROWN, for plaintiff in error.

MILLER & HALL, for defendants in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The judgment of this Court is, that the injunction in this case should not have been dissolved, the answer not having sworn off the equity of the bill.

[1.] As to the womb disease alleged to have existed in one of the women at the time of the sale, the denial is, and of necessity must be, a mere matter of opinion—no disease is more subtle; none effects the whole system so completely; and consequently, none is more difficult to detect. And as to the the defect in the eye, of the other woman, while the fact is admitted, it is insisted, that the blemish was obvious, and was not, therefore, covered by the general warranty of soundness.

[2.] That there are numerous elementary *dicta*, as well as reported cases, in favor of this proposition, we do not dispute. We believe, however, that principle and the weight of authority, are the other way. (1 *Parson's on Contracts*, 459, *note*.) A purchaser chooses to rely upon the warranty of the vendor, rather than his own judgment; and if so, he should have the benefit of the protection which it gives him. [3.] But it is argued, that the vendee has ample remedy at Law, by following the vendor to South Carolina. But the doctrine is, that when the Courts get jurisdiction of the person or property of non-residents, they will retain it, to administer justice to its own citizens, and not send them to a foreign jurisdiction to seek redress; and this not considered a violation of the comity of States. And if this be true generally, how much more strongly does it apply in the present case? Who would venture to assail one of the clan of the Quattlebums of historical notoriety in our chivalric sister State, with the significant device on her eschutcheon, *animis opibusque parati.*