J. T. Mathews & Company, Appellees, v. Dubuque Mattress Company, Defendant, and John Kapp, Appellant.

Promissory Note of Corporation: SIGNATURE BY ONE AS PRESI-
DENT: CONSTRUCTION: PAROL EVIDENCE INADMISSIBLE TO EXPLAIN. A promissory note reading "we promise to pay," etc., and containing no reference in the body of the note to the character or capacity of the makers, was signed "Dubuque Mattress Co., John Kapp, Pt." *Held*, that, upon the face of the note, Kapp was personally liable, and that oral testimony was inadmissible to show that he was at the time president of the company, and authorized to sign notes for it, that the note was given for goods sold to the company, and was intended to bind it alone, and that the payee knew that fact when he took it. —KINNE and GRANGER, JJ., *dissenting*.

*Appeal from Dubuque District Court.*

TUESDAY, JANUARY 24, 1893.

ACTION on a promissory note. Judgment for the plaintiff, and defendant Kapp appeals.—*Affirmed.*

*O'Donnell Bros.*, for appellant.

*Longueville & McCarthy*, for appellee.

ROTHROCK, J.—The note upon which the action was brought was in these words:

"$290.87.    CHICAGO, ILL., March 15th, 1889.
Ninety days after date, we promise to pay to the order of J. T. Matthews & Co. two hundred and ninety and eighty-seven one hundred dollars. Payable at the office of the Dubuque Mattress Co., Dubuque, Iowa. Value received. Accepted March 21st, 1889.
                    "DUBUQUE MATTRESS CO.,
                            "John Kapp, Pt."

Defendant Kapp alone answered—that at the date and acceptance of the note he was the president of the

corporation, the Dubuque Mattress Company, and had full authority to sign notes and acceptances for said corporation in its business; that the consideration for the note sued on was goods purchased from the plaintiff firm for the mattress company, and that the mattress company received the whole of the consideration for the note, which fact was known to the plaintiff; that the plaintiff knew when taking the note that it was signed by the appellant only to evidence the signature and bind the corporation, and that the appellant so intended. A demurrer to the answer was sustained, from which ruling this appeal is taken.

The only question in the case is as to the admissibility of parol evidence to establish the facts set forth in the answer. This court has held in a large number of cases that where the person signing a note adds thereto his name of office, either in full or by abbreviation, and there is nothing on the face of the instrument showing that he does not intend to be bound thereby, he is personally liable for the performance of the contract, because the name of office is merely descriptive of the person. We need not cite the cases. They will be found in McClain's Digest (volume 1) under the title of "Agency." The latest expression of this court upon that subject will be found in the recent case of *Lee v. Percival*, 85 Iowa, 639. And this rule has the sanction of a large preponderance of adjudged cases. In Parsons on Contracts (volume 1, p. 57), it is said in reference to that question that "the case sometimes occurs where a person holding some office signs his name, adding to it the name of his office, for the purpose of representing himself as an official agent, and preventing his personal liability; but this mere addition seldom has this effect, being usually regarded only as a word of description." This rule is based upon the principle that the legal effect of the language used in the note or contract imports an obligation personally bind-

ing upon the signer of the instrument. And in the cases of *Heffner v. Brownell*, 75 Iowa, 341, and *McCandless v. Canning Co.*, 78 Iowa, 161, we held that parol evidence was not admissible to show that a party signing a note in that way did not intend to be personally liable thereon.

These cases are decisive of the question presented in the case at bar, and must lead to an affirmance, unless we overrule decided cases. A majority of the court are not able to discover any good reason for so doing. An examination of adjudged cases will show, as claimed by counsel for the appellant, that there is authority for holding that extrinsic evidence is admissible to explain the writing. On the other hand, there are many cases which hold that parol evidence is not admissible. An able text writer uses the following language in reference to this question: "To extract general principles from these cases whose conflict is so great as to amount, in the language of a recent case, 'almost to anarchy,' is manifestly difficult." We do not deem it necessary to cite the cases which are in accord with the former rulings of this court. When it is conceded that the instrument construed alone is binding on the party, it appears to us that there is no law pertaining to ambiguous writings which will authorize a relaxation of the rule that a written contract can not be added to, altered, or changed by parol evidence; and the rule as recently announced by this court in *Lee v. Percival, supra*, renders it wholly unnecessary, to the protection of any right of the signer of such an instrument, to overrule any case heretofore decided by this court. The note involved in *Percival's case*, is substantially the same as the note in the case at bar; and it is held that the party whose name was signed might by an appropriate pleading set up that the note was so signed by mutual mistake of the party, and demand a reformation of the instrument, and prove the mistake

by parol. It should be the aim of every court of last resort to build up a harmonious and consistent line of authority, and thus avoid confusion; and cases should be overruled only when there appears to be a necessity therefor, in order to protect the rights of the people, or to promote the proper administration of justice. When a party to such an instrument is by an authoritative decision of this court given the opportunity to reform the instrument by parol evidence, he should not be heard when he asserts the claim that former decisions of the court should be overruled, because there are cases in conflict with them, and because he can not be allowed to introduce parol evidence in an action at law, and under a merely defensive answer.

It is claimed that because this note is made payable at the office of the Dubuque Mattress Company, and that the note contains the words, "Accepted March 21, 1889," it renders the instrument ambiguous, so as to change the rule as to extrinsic evidence. We discover nothing in fixing the place of payment, or the use of the words of acceptance, to create any ambiguity which would affect the question as to the introduction of extrinsic evidence to contradict the legal effect of the instrument. The judgment of the district court is AFFIRMED.

KINNE, J.—(dissenting). Under the doctrine announced in the majority opinion in this case, and in other cases on which it is based, it is held that parol evidence of intention of the parties is inadmissible. I am unable to concur in that conclusion. It would be useless to attempt to consider, much less reconcile, all the cases bearing on the question. I shall endeavor to state the law which I believe applicable in this case, and make a brief review of a few of the authorities which support my contention.

If in such a case there is anything on the face of the paper, whether in the body of the note or as a part

of the signature, which suggests a doubt as to the party bound, or the character in which any of the signers has acted in affixing his name, parol evidence is admissible between the original parties to establish the real intent; hence while, where one signs as agent of another, the *prima facie* presumption is that the words are merely *descriptio personæ*, and, therefore, the one so signing is personally bound, yet it may be shown, in an action between the original parties to the instrument, that it was not so intended, and that, in fact, the real intention was to bind the principal whose name was disclosed in the signature of his agent, or who was well known by the payee to be the real party to be bound. *Hardy v. Pilcher*, 57 Miss. 18; *Haile v. Pierce*, 32 Md. 327; *McClellan v. Reynolds*, 49 Mo. 312; *Baldwin v. Bank*, 1 Wall. 234; *Carpenter v. Farnsworth*, 106 Mass. 561; *Mechanics' Bank v. Bank of Columbia*, 5 Wheat. 326; *Means v. Swormstedt*, 32 Ind 87. Sometimes the doctrine is stated that, where words which may be either descriptive of the person, or indicative of the character in which he contracts, are affixed to the name of the contracting party, *prima facie* they are descriptive of the person only; but the fact that they were not so intended by the parties, but were understood as determining the character in which the party contracted, may, as between the original parties, be shown by extrinsic evidence. *Pratt v. Beaupre*, 13 Minn. 177 (Gil. 187); *Bingham v. Stewart*, 14 Minn. 214 (Gil. 153); *Deering v. Thom*, 29 Minn. 120; 12 N. W. Rep. 350; *Rowell v. Oleson*, 32 Minn. 288; 20 N. W. Rep. 227. A learned author thus states the rule, as being supported by the preponderance of authority: "Between the immediate parties to a bill or note, parol evidence is admissible to show that, by a course of dealing between the parties, that form of execution has become to be the recognized and adopted form by which the obligation of the principal

is entered into;" also, that it is admissible to show "that the instrument was, to the knowledge of the parties, intended to be the obligation of the principal, and not of the agent, and that it was given and accepted as such." Mechem, Ag., section 443; *Metcalf v. Williams*, 104 U. S. 93; *Hovey v. Magill*, 2 Conn. 680; *La Salle Nat. Bank v. Tolu Rock and Rye Co.*, 14 Ill. App. 141; *Gerber v. Stuart*, 1 Mont. 172, *Bank of Genesee v. Patchin Bank*, 19 N. Y. 312; *Brockway v. Allen*, 17 Wend. 40; *Owings v. Grubbs*, 6 J. J. Marsh. 31; *McClellan v. Reynolds*, 49 Mo. 312.

Parsons, in speaking of the manner in which an agent should sign a contract, says: "But the recent cases and the best reasons are for determining in each instance, and with whatever technical inaccuracy the signature is made, from the facts and the evidence, that a party is an agent or a principal, in accordance with the intention of the parties to the contract, if the words are sufficient to bear the construction." 1 Pars. Cont., p. 54, and notes. Again, it has been well said: "If, upon the face of the instrument, there are indications suggestive of agency, such as the addition of words of office or agency to the signature, or the imprint of the corporate title on the paper, parol evidence is competent to show who the parties intended should be bound or benefited." Abb. Tr. Ev. 37. Again, adding the title "Agent" or the like to a signature is notice to the payee that the signer does not intend to be personally liable, and, where the principal is known, he alone is liable. 1 Am. and Eng. Encyclopedia of Law, p. 390, and citations.

A reference may profitably be made to some of the cases wherein the principles above announced have been approved. When a bill of exchange was drawn in the ordinary form, but signed by one with the word "Treasurer" following his name, it was held parol evidence was admissible to show that it was intended to

bind the principal, and that the facts pleaded (substantially the same as in this case), if true, were sufficient to relieve the party from personal liability. *Martin v. Smith*, 3 South. Rep. (Miss.) 33; *Rowell v. Oleson*, 32 Minn. 288; 20 N. W. Rep. 227. In case of a note in the ordinary form, and signed "Pioneer Mining Company. John E. Mason, Supt.," the note reading, "We promise to pay," etc., parol evidence was admitted to show that the intention was to bind the company only. The court said Mason's liability was not to be determined merely by reference to the rules of grammar. "Shall we say that the omission of the word 'by' or 'per' renders the instrument unmistakably the note of Mason?" *Bean v. Pioneer Mining Co.*, 6 Pac. Rep. (Cal.) 86. An instrument reading: "If the Marsh Harvester don't work to his satisfaction, he (W. Thom) can return the machine to me, and I will return his notes to him. A. M. Schell, Agent,"— was held open to prove by parol that it was intended to bind his principal, not himself. *Deering v. Thom*, 29 Minn. 120; 12 N. W. Rep. 350. See, also, *Bingham v. Stewart*, 13 Minn. (Gil. 96.) 106. In a case where a note in the usual form was signed, "W. T. Boutell, Pres.," it was held that the *prima facie* character of the liability might be overcome by parol evidence, and the obligation shown to be that of the corporation. *Collender Co. v. Boutell*, 45 Minn. 21; 47 N. W. Rep. 261; *Peterson v. Homan*, 46 N. W. Rep. (Minn.) 303. A note in the usual form was payable to A. J. Boardman, treasurer, and signed, "Minneapolis Eng. and Machine Works, By A. L. Crocker, Secy.," and was indorsed, "A. J. Boardman, Treasurer." It was held parol evidence was admissible to show that Boardman indorsed it in his official capacity, as treasurer of a corporation. *Souhegan Bank v. Boardman*, 48 N. W. Rep. (Minn.) 1116. In case of a note signed, "John Kean, President Elizabethtown and Jonesville R. R. Co.," the court

says: "It is not clear who was the contracting party, whether the obligation was assumed by the agent, or whether he contracted on behalf of his principal. * * * The question is, who is the contracting party —whose language is it?"—and it was held parol evidence was admissible. The court quoted the following language from *Lazarus v. Shearer*, 2 Ala. 718: "When, however, it is doubtful from the face of the contract whether it was intended to operate as the personal engagement of the party signing it, or to impose an obligation upon some third person as his principal, parol evidence is admissible to show the true character of the transaction." *Kean v. Davis*, 21 N. J. Law, 683; *Railroad Co. v. Snead*, 19 Grat. 354; *Rendell v. Harriman*, 75 Me. 497.

Cases may be found which go so far as to hold that a note in form like that at bar is on its face unambiguous, and the obligation of the corporation alone. *Farmers' & Mechanics' Bank of Savings v. Colby*, 64 Cal. 352, 28 Pac. Rep. 118; *Liebscher v. Kraus*, 74 Wis. 387, 43 N. W. Rep. 166; *Draper v. Heating Co.*, 5 Allen, 338; *Castle v. Foundry Co.*, 72 Me. 167; *Houghton v. Bank*, 26 Wis. 663; *Ballston Spa Bank v. Marine Bank*, 16 Wis. 120; *Rockwell v. Bank*, 13 Wis. 653; *Latham v. Houston Flour Mills*, 3 S. W. Rep. (Tex. Sup.) 462. But we are not called upon to go to the extent of the authorities last cited, but may rest on the rule that, as between the original parties, parol evidence is admissible to show the intention of the parties whenever there is anything appearing in the instrument which suggests that it may have been signed by one in an official or representative capacity. The admission of parol evidence in such cases does not violate the general rule prohibiting its admission to alter or change a written contract. The question in such cases is not what the contract is, but whose contract is it? On whose behalf was it executed? Who is the real party

bound thereby? Such evidence, in that respect, renders that certain which without it is uncertain, and thus enables the court to charge as obligor or payor the person or corporation which it was intended should be bound when the contract was entered into. This rule is not only based upon sound, legal principles, but has the merit of being equitable and just in its operation, and is befitting the enlightened jurisprudence of the age. I do not undervalue precedents, but, when precedents may be found to support two or more rules, those should be followed which recognize the force and effect of usage and custom in the commercial and business world, when best calculated to effectuate justice.

If John Kapp had added the word "by" or "per" to the signature of the "Dubuque Mattress Company," and followed it with his own name, he would have unquestionably bound the company only. By signing, as he did, with "Pt." after his name, the question is at once suggested, did he or did he not sign this note in an official capacity. To determine this fact, extrinsic evidence may be resorted to. The doctrine announced in the majority opinion seems to be based on the prior holdings of this court, and special stress is given to the fact that in *Lee v. Percival*, 85 Iowa, 639, the court has furnished a means of escape from the effect of the rule, which is purely technical, by means of re-formation of the instrument in equity. No reason is suggested why a party should be driven to a court of equity except to avoid the necessity of overruling bad precedents. The rule announced in the cases cited in the majority opinion is, as I believe, contrary to the trend of modern decisions, is well calculated to effectuate injustice, and is indefensible from any point of view. The action of the court below in sustaining the demurrer was erroneous, and should be REVERSED.

GRANGER, J., concurs in this dissent.